UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HANI BURNI,                                          CIVIL NO. 06-5046 (PAM/JSM)

     Plaintiff,

v.                                                  REPORT AND RECOMMENDATION

DENISE FRAZIER, et al.,

     Defendants.

     JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came before the undersigned upon defendants' Motion to Dismiss [Docket No. 5]. Lonnie F. Bryan, Esq. appeared on behalf of defendants. Marc Prokosch, Esq., appeared on behalf of plaintiff. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

## I.    FACTUAL BACKGROUND

Plaintiff Hani Burni brings this action against Denise Frazier, District Director, United States Citizenship and Immigration Services ("USCIS"); Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services; and Robert S. Mueller, Director, Federal Bureau of Investigation, seeking a writ to compel defendants to complete the required background checks and security clearances and to adjudicate his application for adjustment of immigration status.

Plaintiff is a native of Saudi Arabia and a citizen of Syria who resides in Minnetonka, Minnesota. Complaint, ¶¶ 1, 8 [Docket No. 1]. After marrying a U.S. citizen in 2004, he filed an I-485 application for adjustment of status to lawful permanent

SCANNED

F  1 4 2008

U.S. DISTRICT COURT ST. PAUL

residency on or about December 10, 2004. Id., ¶ 8. Plaintiff's wife filed an I-130 visa petition simultaneously with plaintiff's I-485 petition. Id., ¶ 9. The visa petition was approved on June 30, 2005, and plaintiff was therefore immediately eligible to adjust his immigration status to that of a lawful permanent resident. Id. Plaintiff was given notice that he could not be recommended for final approval because his security checks were not complete. Id., ¶ 10. Plaintiff has made numerous efforts to get defendants to complete their security checks and adjudicate his application, including making written inquiries to the Department of Homeland Security, making Infopass appointments at the local district office to inquire about the status of his case, and writing to various government officials. Id., ¶ 12. Because his application has not been adjudicated, plaintiff has been unable to move forward with his life, he has lost valuable job opportunities, he has been deprived of peace of mind, and deprived of important benefits, rights and protections to which he would be entitled as a lawful permanent resident of the United States. Id., ¶ 14.

According to defendants, the FBI commenced plaintiff's name check on or about December 23, 2004.[1] Declaration of Rebecca Arsenault Herize, ¶ 5(d) [Docket No. 7].

The Complaint seeks an order compelling defendants and those acting under them to complete the required background checks and adjudicate plaintiff's application for adjustment of status. Complaint, ¶ 21. Plaintiff alleges that this Court has jurisdiction of the suit pursuant to 28 U.S.C. § 1361 (Mandamus Act), 28 U.S.C. § 1331 (federal question statute) and 5 U.S.C. §§ 551 et seq. and 701 et seq. (Administrative

---

[1]     The Declaration of Michael Cannon states that the name check request for plaintiff was received by the FBI on or about December 30, 2004. Cannon Decl., ¶ 22 [Docket No. 8].

Procedure Act).   Complaint, ¶ 2.   Plaintiff asserts that he has exhausted his administrative remedies.  Complaint, ¶ 13.

Defendants now bring the current motion to dismiss for lack of subject matter jurisdiction.  [Docket No. 5].

## II.    STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); see also Osborn v. United States, 918 F.2d 724, 729, n. 6 (8th Cir. 1990).   In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.  See Osborn, 918 F.2d at 729, n. 6.  The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.  See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729, n. 6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6).  See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729, n.6.  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact

exist." Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3rd Cir. 1977)).

Here as the parties are relying on facts extrinsic to the Complaint, the Court will treat defendants' motion as a factual challenge to jurisdiction. See Sawad v. Frazier, 2007 WL 2973833 at *1 (D.Minn. Oct. 9, 2007) (J. Doty) ("When a party moves to dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1), the court may consider matters extrinsic to the allegations in the complaint without converting the proceedings to a Rule 56 summary judgment action because the court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" (citing Osborn, 918 F.2d at 729-30)).

## III.    ANALYSIS

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that none of the grounds for jurisdiction cited by plaintiff are valid, and that the Immigration and Nationality Act ("INA") bars plaintiff's claim. Defs. Mem., p. 3 [Docket No. 10]. Specifically, defendants' motion to dismiss is based on their contention that 8 U.S.C. § 1252(a)(2)(B)(ii) of the Immigration and Nationality Act ("INA") bars plaintiff's claim, and the other statutes relied upon by plaintiff, the Mandamus Act and the APA, do not confer subject matter jurisdiction on this Court. Defs. Mem., p. 1 [Docket No. 6]. Thus, it is defendants' position that while plaintiff has been waiting more than 3 years for USCIS to adjudicate his application for adjustment of status, his only remedy is to wait and this Court has no authority to intervene. For all of the reasons set forth below, this Court rejects defendants' contentions and concludes that it has jurisdiction over plaintiff's suit.

4

### A.     8 U.S.C. § 1252(a)(2)(B)(ii)

It is defendants' position that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of

the denial of an adjustment of status application.  Therefore, they maintain that a court

cannot compel USCIS to adjudicate an adjustment of status application within a

particular period of time.   Defs. Mem., p. 9.   In short, defendants claim that §

1252(a)(2)(B)(ii) strips this Court of jurisdiction over plaintiff's suit and his case should

be dismissed.  The Court disagrees.

In pertinent part, 8 U.S.C. § 1252 (a)(2)(B)(ii) states as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory),
> including section 2241 of Title 28, or any other habeas corpus provision,
> and sections 1361 and 1651 of such title, and except as provided in
> subparagraph (D), and regardless of whether the judgment, decision, or
> action is made in removal proceedings, no court shall have jurisdiction to
> review —
>
> > (ii) any other decision or action of the Attorney General or the
> > Secretary of Homeland Security the authority for which is specified
> > under this subchapter to be in the discretion of the Attorney
> > General or the Secretary of Homeland Security, other than the
> > granting of relief under section 1158(a) of this title.

(Emphasis added).

Section 1255 of Title 8 is the provision within the INA that bears on plaintiff's

application for adjustment of status. This statute states:

> The status of an alien who was inspected and admitted or paroled into the
> United States or the status of any other alien having an approved petition
> for classification as a VAWA[2] self-petitioner may be adjusted by the
> Attorney General, in his discretion and under such regulations as he may
> prescribe, to that of an alien lawfully admitted for permanent residence if
> (1) the alien makes an application for such adjustment, (2) the alien is

---

[2]     VAWA stands for the Violence Against Women Act.  See 8 U.S.C. §

1101(a)(51).

> eligible to receive an immigrant visa and is admissible to the United States
> for permanent residence, and (3) an immigrant visa is immediately
> available to him at the time his application is filed.

(Emphasis added).

Defendants claim that because § 1255 gives the Attorney General discretion to adjust plaintiff's adjustment of status, it follows that § 1252(a)(2)(B)(ii) strips the Court of jurisdiction to address his claims.

"The jurisdiction stripping language [of Section 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." Alaka v. Attorney General, 456 F.3d 88, 95 (3d Cir. 2006). "The statute in question, therefore, must specifically provide the discretionary authority before Section 1252 divests the court of jurisdiction." Duan v. Zamberry, 2007 WL 626116 at *2 (W.D.Pa. Feb. 23, 2007). As the Third Circuit stated:

> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the
> authority to review any discretionary immigration decision. That reading,
> however, is incorrect, because § 1252(a)(2)(B)(ii) strips us only of
> jurisdiction to review discretionary authority specified in the statute. The
> statutory language is uncharacteristically pellucid on this score; it does not
> allude generally to "discretionary authority" or to "discretionary authority
> exercised under this statute," but specifically to "authority for which is
> specified under this subchapter to be in the discretion of the Attorney
> General."

Khan v. United States, 448 F.3d 226, 232 (3d Cir. 2006) (quoting Zhao v. Gonzales, 404 F.3d 295 (5th Cir. 2005)); see also Sun v. Chertoff, 2007 WL 2907993 at *2 (D.Minn. Oct. 1, 2007) (quoting same).

There is no explicit provision in either § 1255 (or for that matter, its implementing regulations) that grants the Attorney General or USCIS specific discretion regarding the pace of adjudicating adjustment of status applications; rather, § 1255 only specifies that

the Attorney General may adjust the status of an alien in his discretion.[3] "While 8

U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the

_____

[3]      To the extent that defendants are relying on 8 C.F.R. § 103.2(b)(18) for the proposition that this regulation permits withholding of adjudication of an adjustment to status application until investigation is complete, (Defs. Mem., p. 10), this argument finds no support in the language of the regulations or the facts in this case.  Section 103.2(b)(18) states, in pertinent part:

A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

Section 103.2(b)(18) sets forth procedures for withholding of a decision on an application under certain circumstances, beginning one year after an application has been filed and no decision has been made. However, "this regulation . . . does not deprive this court of jurisdiction." Saleem v. Keisler, 520 F.Supp.2d 1048, 1055 (W.D.Wis. 2007). Furthermore, defendants have made no showing that the requirements of 8 C.F.R. § 103.2(b)(18) have been followed in this case. Without evidence that this regulation applies to plaintiff or that defendants have complied with its terms, the regulation will not relieve defendants of their obligation to adjudicate plaintiff's application within a reasonable time. Id. at *9 ("Because defendants do not suggest that they followed the procedures outlined in §103.2(b)(18), that regulation cannot provide a basis for dismissing this case for a lack of jurisdiction."); Elmalky v. Upchurch, 2007 WL 944330 at *4 (N.D.Tex. Mar. 28, 2007) (where defendants merely cited to regulations

discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely." Han Cao v. Upchurch, 496 F.Supp.2d 569, 573 (E.D.Pa. 2007); Saleem v. Keisler, 520 F.Supp.2d 1048, 1055) (W.D.Wis. 2007) (quoting same). See also Tang v. Chertoff, 493 F.Supp.2d 148, 153-154 (D.Mass. 2007) ("The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the substance of an adjustment of status decision as discretionary, the pacing of such a decision is not so specified."); Ahmadi v. Chertoff, 522 F.Supp.2d 816, 819 (N.D.Tex. 2007) ("Section 1252(a)(2)(B)(ii) only preludes judicial review of decisions or actions that are specified to be within the discretion of the Attorney General. . . . [T]he duty to act on an application, as distinguished from how to act, is not specified to be within the discretion of the Attorney General."); Belegradek v. Gonzales, 523 F.Supp.2d 1364, 1367 (N.D.Ga. 2007) ("[§ 1252(a)(2)(B)(ii)] precludes review of discretionary decisions of the Attorney General 'in only the specific circumstances where the [authority for a] 'decision or action of the Attorney General ... is specified under this subchapter to be in the discretion of the Attorney General....' Thus, to avoid judicial review, the Attorney General must rely on an explicit, 'Congressionally-defined, discretionary statutory power ... articulated within sections 1151 through 1378' of Title 8—and not an administrative or other implied discretionary power." (citing Zafar v. U.S. Attorney General, 461 F.3d

---

without demonstrating that they acted pursuant to and in accordance with the regulations, § 103.2(b)(18) did not relieve defendants of their obligation to adjudicate application within a reasonable time); Duan, 2007 WL 626116 at *3, n. 4 (observing that defendants did not assert that they acted pursuant to § 103.2(b)(18), and finding that in any event, an action under that regulation "would still be subject to the reasonableness requirement imposed by the APA." (citation omitted)).

8

1357, 1361 (11th Cir. 2006)); <u>Sun</u>, 2007 WL 2907993 at *2 ("The plain terms of §

1252(a)(2)(B)(ii) require that a decision or action committed to the discretion of USCIS

be "specified under" § 1255 or its implementing regulations. Because § 1255 specifies

no such discretion with regard to the pace of adjudication of I-485 applications, § 1252

does not strip the court of jurisdiction"); <u>Zhi He v. Chertoff</u>, 2007 WL 2572359 at *4

(D.Vt. Sept. 4, 2007) ("the pace of adjudication has not been specified as

discretionary"); <u>Elmalky</u>, 2007 WL 944330 at *4) ("Section 1255(a), . . . 'specifies only

that it is within the discretion of the Attorney General to adjust one's status; it does not

address, much less specify any discretion associated with, the pace of application

processing.'") (citation omitted); <u>Duan</u>, 2007 WL 626116 at *2 ("Although the speed of

processing may be 'discretionary' in the sense that it is determined by choice, and that it

rests on various decisions that Defendants may be entitled to make, it is not

discretionary in the manner required by the jurisdiction-stripping language of the

[INA].").

Therefore, pursuant to the plain language of § 1255, as there is nothing in this

statute that grants discretion to defendants to determine the pace of adjudication of I-

485 applications for adjustment of status, this Court finds that § 1252(b)(2)(B)(ii) does

not strip the court of jurisdiction.[4]

---

[4]       This Court recognizes that a number of district courts have reached a contrary
conclusion, finding that § 1252(b)(2)(B)(ii) does strip the court of jurisdiction. <u>See e.g.</u>
<u>Orlov v. Howard</u>, 523 F.Supp.2d 30 (D.D.C. 2007); <u>Korobkova v. Jenifer</u>, 2007 WL
3245178 (E.D.Mich. Nov. 2, 2007); <u>Li v. Gonzales</u>, 2007 WL 1303000 (D.N.J. May 3,
2007). However, for the reasons articulated, the Court does not find the reasoning of
those decisions to be persuasive, and rather joins those courts that have concluded that
§ 1252(b)(2)(B)(ii) does not strip the Court of jurisdiction.

Further, while some courts have found that the pace at which the USCIS processes an application is a discretionary action within the meaning of 8 U.S.C. § 1252(b)(2)(B)(ii), see Safadi v. Howard, 466 F.Supp.2d 696 (E.D.Va. 2006) and its progeny,[5] this Court joins those courts around the country that have concluded that § 1252(b)(2)(B)(ii) does not bar plaintiff's suit because defendants' inaction does not amount to a decision or action that permits defendants to invoke the protection of this section.

> [A] "decision" means that something must be decided. Although an "action" has a broader meaning, it too suggests that some conclusion has been made about the appropriate course to take. Dong v. Chertoff, No. C 2007 WL 2601107 (N.D.Cal. Sept. 6, 2007) ("The phrase 'decision or action' connotes some affirmative conduct by the Attorney General."). Because plaintiff's claim is premised on defendants' refusal to make a

---

[5]   In Safadi, the court concluded that an "action" under § 1252(a)(2)(B)(ii) encompasses not just final decisions but "any act or series of acts that are discretionary within the adjustment of status process," including "the completion of background and security checks and the pace at which the process proceeds." 466 F.Supp.2d at 699. See also Sharif v Chertoff, 497 F. Supp. 2d 928 (N.D. Ill. 2007); Grinberg v. Swacina, 478 F.Supp.2d 1350 (S.D.Fla. 2007); Orlov v. Howard, 523 F.Supp.2d 30 (D.D.C. 2007); Sun v. Gonzales, 2007 WL 3548280 (E.D. Wash. Nov. 15, 2007); Luo v. Keisler, 2007 WL 3357241 (D.D.C. Nov. 14, 2007); Korobkova v. Jenifer, 2007 WL 3245178 (E.D.Mich. Nov. 2, 2007); Wang v. Chertoff, 2007 WL 4139475 (N.D.Ga. Oct. 30, 2007); Tan v. Chertoff, 2007 WL 1880742 (E.D. Mo. June 29, 2007; Li v. Gonzales, 2007 WL 1303000 (D.N.J. May 3, 2007) (all relying on reasoning of Safadi and declining jurisdiction under §1252). However, as Judge Crabb observed in Saleem:

> [The] argument in Safadi is a red herring because an exercise of jurisdiction over plaintiff's claim is not contingent on whether an 'action' is a final decision or includes interim actions taken along the way. The logic of Safadi would have force if plaintiff were challenging defendants' decision to conduct certain background checks or the actions taken in furtherance of that decision…But plaintiff is not challenging any interim action of defendants, only their failure to act. Thus, no matter how narrowly a court defines 'action,' it would require an Orwellian twisting of the word to conclude that it means a failure to adjudicate.

520 F.Supp.2d at 1052 (citations omitted).

"decision" or to take "action" on his application, . . . § 1252(a)(2)(B) is not
implicated in this case.

Saleem, 520 F.Supp.2d at 1051; see also Soliman v. Gonzales, 2007 WL 4294662 at *5

(E.D.Pa. Dec. 5, 2007) (finding that § 1252(a)(2)(B) did not bar judicial review because

USCIS had "not acted in any way with regard to plaintiffs' applications"); Wang v.

Chertoff, 2007 WL 4200672 at *4 (D.Ariz. Nov. 27, 2007) ("The defendants argue the

term 'decision or action' is sufficiently broad to include the process of adjudication. The

court does not agree. . . . [Section 1252(a)(2)(B)(ii)] does not give the Attorney General

or the Secretary of Homeland Security discretionary authority over the pace of

adjudication."); Elhaouat v. Mueller, 2007 WL 2332488 at *2 (E.D.Pa. Aug. 9, 2007)

(discussing cases which found that "the plain language of the provision ... addresses

'decision or action' on immigration matters, not inaction") (citation omitted)); Song v.

Klapakas, 2007 WL 1101283 (E.D.Pa. Apr. 12, 2007) ("'Plaintiffs do not ask this court to

'review' a governmental action, but to examine and rectify a gross inaction.'") (quoting

Paunescu, 76 F.Supp.2d at 900)); Elmalky, 2007 WL 944330 at *5 (rejecting

defendants' argument that "action" in § 1252(a)(2) (B)(ii) refers "to an ongoing process

or a series of acts.").

Having found that jurisdiction is not foreclosed by §1252(a)(2)(B), the Court now

turns to the question of whether it has subject matter jurisdiction to proceed.

## B.   Mandamus Act and APA

Plaintiff alleges subject matter jurisdiction based on 28 U.S.C. § 1331, the federal question statute,[6] 28 U.S.C. § 1361, the Mandamus Act, and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551 et seq., and 701, et seq.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  A writ of mandamus is appropriate only where "(1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." Castillo v. Ridge, 445 F.3d 1057, 1060-61 (8th Cir. 2006) (citations omitted).

The APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).  Further, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  When judicial review is proper, "[t]he reviewing court shall

---

[6]     Defendants correctly argue that the federal question statute does not, in itself, provide subject matter jurisdiction.  However, subject matter jurisdiction under the APA does arise under the federal question statute.  Califano v. Sanders, 430 U.S. 99, 108 (1977); see also Sabhari v. Reno, 197 F.3d 938, 943 (8th Cir. 1999), 197 F.3d 938, 943 (8th Cir. 1999) ("[I]f § 1331 is to be used to secure relief against the United States, it must be tied to some additional authority which waives the government's sovereign immunity. Such a waiver may be found in the Administrative Procedure Act.").

compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.

However, the APA does not apply where (1) statutes preclude judicial review; or (2)

agency action is committed to agency discretion by law. 5 U.S.C. § 701(a).

In response to plaintiff's claim for relief under the Mandamus Act, defendants

argued that mandamus is inappropriate because plaintiff does not have a clear right to

adjudication of his application within a specific time frame, and he has an adequate

alternative remedy, which is to wait until his application is adjudicated. Def. Mem., pp.

13-15. In response to plaintiff's claim under the APA, defendants maintained that the

INA (i.e. 8 U.S.C. § 1252(b)(2)(B)(ii)) precludes judicial review,[7] the APA precludes

judicial review of agency actions committed to the discretion of the agency, and plaintiff

has an adequate remedy. Id., pp. 15-17.

Plaintiff countered that he filed his I-485 application pursuant to 8 C.F.R. § 245.

This regulatory scheme requires:

> The applicant shall be notified of the decision, and if the application is
> denied, of the reasons for denial . . . If the application is approved, the
> applicant's permanent residence shall be recorded as of the date of the
> order approving the adjustment of status...

8 C.F.R. §§ 245.2(a)(5)(i) and (ii).

According to plaintiff, this regulation, in conjunction with § 555(b) of the APA,

creates a non-discretionary duty to adjudicate his within a reasonable time. Pl.'s Mem.,

pp. 4-5 (citations omitted). In addition, plaintiff asserted that he has no alternative,

adequate remedy. Id., p. 7.

---

[7]     The Court has already determined that 8 U.S.C § 1252(a)(2)(B) does not
preclude judicial review.

For all of the reasons articulated below, the Court rejects defendants' reasoning and finds that both the APA and Mandamus Act afford plaintiff relief.

As a preliminary matter, this Court finds, as have other courts, that analysis of jurisdiction and relief under the Mandamus Act and APA is coextensive, and that there is no need to perform a separate analysis under the two acts. See Sun, 2007 WL 2907993 at *3, n. 7 (citations omitted).

The Court recognizes that district courts around the country are split on the issue of whether jurisdiction lies to entertain a claim for failure to timely adjudicate an adjustment of status application. See e.g. Orlov, 523 F.Supp.2d at 34 ("Several courts have determined that federal courts lack jurisdiction to review delays in the adjustment process. . . But other courts have determined that 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review of such claims.") (internal and external citations omitted)); Khelashvili v. Dorochoff, 2007 WL 4293634 at *2-3 (N.D. Ill. Dec. 6, 2007) ("Although we acknowledge that a number of courts have found no duty to process applications under 8 U.S.C. § 1255(a), . . . we are persuaded by the reasoning of an equal number of courts finding in favor of subject matter jurisdiction and a nondiscretionary duty to adjudicate") (citations omitted)); Sun, 2007 WL 3548280 at *4 ("Many federal district courts agree that the pace at which USCIS adjudicates I-485 applications is nondiscretionary. . . . Other district courts have held that the statutory framework precludes judicial review of the pace at which the government reviews change of status applications." (internal and external citations omitted)); Saleem, 520 F.Supp.2d at 1050-51 (citing to numerous decisions around the country that have considered the jurisdictional arguments raised by defendants); Shah v. Hansen, 2007 WL 3232353 at

14

*5 (N.D.Ohio Oct. 31, 2007) (citing to sampling of cases that have found that USCIS has a non-discretionary duty to adjudicate an application for adjustment of status and cases that have found the duty to be discretionary). "In fact, barely a day has gone by in recent weeks without a new decision weighing in on what has become a national judicial debate." Saleem, 520 F.Supp.2d at 10513.

Like several other judges in this District, this Court "joins a growing number of district courts in concluding that the USCIS has a duty to adjudicate adjustment of status applications once they have been submitted and that the APA requires the applications to be adjudicated in a reasonable time." Sun, 2007 WL 2907993 at *3 (citations omitted); see also, Asrani v. Chertoff, 2007 WL 3521366 at *3 (D.Minn. Nov. 14, 2007) (J. Tunheim); Sawad v. Frazier, 2007 WL 2973833 at *3 (D.Minn. Oct. 9, 2007) (J. Doty); Haidari v. Frazier, 2006 WL 3544922 at *4 (D.Minn. Dec. 8, 2006) (J. Frank).[8] In this regard, as Judge Doty stated in Sun:

---

[8]    This Court recognizes that in a fifth case out of this District, Chaudry v. Chertoff, 2006 WL 2670051 (D.Minn. Sept. 18, 2006) (J. Magnuson), (the same judge assigned to the instant matter), that the Court found that the mandamus statute did not provide subject matter jurisdiction, and that under the APA (which was not pled), the delay (approximately 22 months from application and 17 months from documentation and interview) was not unreasonable as a matter of law. Id. at *2-3. This Court notes that this was the first case to be decided out of this District, plaintiff was pro se, and Judge Magnuson did not have the benefit of the extensive case law that has developed on the subject since his decision. In addition, the Court notes that Judge Magnuson did not foreclose plaintiff from returning to court in the future. He dismissed the case without prejudice "because Plaintiff's claims, if properly pled, may have merit if the FBI and USCIS persist in delaying adjudication of Plaintiff's I-485 petition." Id. at *3. Finally, the Court notes that on February 4, 2008, the USCIS issued "Revised National Security Adjudication and Reporting Requirements," which now require that if a name check in connection with an I-485 application has been pending more than 180 days and the application is otherwise approvable, the application shall be approved and the card issued. See February 4, 2008 U.S. Citizenship and Immigration Services Interoffice Memorandum regarding Revised National Security Adjudication and Reporting Requirements ("February 4, 2008 USCIS Memorandum") (attached to Praecipe to File

Title 8, section 1255 of the U.S. Code provides that an applicant's status "may be adjusted by the Attorney General, in his discretion ... to that of an alien lawfully admitted for permanent residence." This language only refers to the ultimate decision of whether to grant permanent residence status. It does not provide that the USCIS can choose not to adjudicate Sun's application. The court is convinced that the USCIS cannot. Rather, once an adjustment of status application is before the USCIS, the agency has an affirmative, non-discretionary duty to process that application. Moreover, although § 1255 and its implementing regulations do not provide for a time frame within which the USCIS must adjudicate I-485 applications, the APA requires that the applications be processed in a reasonable time. See 5 U.S.C. § 555(b). Therefore, [plaintiff] has a clear, indisputable and nondiscretionary right to an adjudication of her application within a reasonable time.

Id. See also Han Cao, 496 F.Supp.2d at 575 ("while USCIS has broad discretion to grant or deny an application for permanent residency, it has a non-discretionary duty to make some decision on the application"); Tang, 493 F.Supp.2d at 154 ("While it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have the discretion to decide not to adjudicate at all." (citation omitted)); Wang, 2007 WL 4200672 at *3 ("[t]he timing of the adjudication process is not a matter over which the USCIS has unfettered discretion. It has a duty to act within a reasonable time."); Ahmadi, 522 F.Supp.2d at 818 ("the regulations and the majority of court decisions make clear that immigration officials have a nondiscretionary duty to act on the application"); Belegradek, 523 F.Supp.2d at 1367 ("[T]he INA imposes a non-discretionary duty on the Attorney General to adjudicate an application for adjustment of status."); Al Daraji v. Monica, 2007 WL 2994608 at *4 (E.D.Pa. Oct. 12, 2007) (finding

---

Certification of Supplement to the Administrative Record (ARCIS) and Memorandum regarding Revised National Security Adjudication and Reporting Requirements (filed as Docket No. 27 on February 6, 2008 in the matter of Mocanu v. Mueller, et. al., No. 07-0445 (E.D.Pa. filed Feb. 1, 2007)) (attached to this Report and Recommendation as Exhibit A). For all of these reasons, this Court believes that a different outcome is warranted here.

that there is no discretion over whether to render a decision on an application); <u>Pool v. Gonzales</u>, 2007 WL 1613272 at *2 (D.N.J. June 1, 2007) ("the obligation of the USCIS to process applications is not discretionary and is reviewable by this Court"); <u>Song</u>, 2007 WL 1101283 at *3 (finding mandamus relief appropriate and stating that "USCIS has a non-discretionary duty to act on applications within a reasonable time").

The district court in <u>Liang v. Attorney General of the United States</u> succinctly summarized the issue of the USCIS's discretion:

> Defendants' point that they are not statutorily obliged to adhere to any particular time-frame in adjudicating I-485 applications is well-taken. It is true that the USCIS's discretion to set the procedures by which it adjudicates these applications gives it some flexibility in determining the timing of a decision. Nonetheless, each adjudication must ultimately be completed within a reasonable amount of time. To accept Defendants' argument that timing is always a matter of discretion beyond the Court's power to intervene would enable them to avoid judicial review even of adjudications that were postponed indefinitely. This would eviscerate § 706(1) of the APA, which clearly gives the Court the power to "compel agency action ... unreasonably delayed."

> As explained in <u>Yu v. Brown</u>, 36 F.Supp.2d 922, 932 (D.N.M. 1999), "although neither [governing] statute specifies a time by which an adjudication should be made, we believe that by necessary implication the adjudication must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely. Congress could not have intended to authorize potentially interminable delays." Accordingly, the Court finds that it has the authority under the Mandamus Act and the APA to compel Defendants to adjudicate promptly Plaintiffs' petitions for adjustment of status.

2007 WL 3225441 at *5 (N.D.Cal., Oct. 30, 2007).

With regard to defendants' argument that plaintiff has an alternative or adequate remedy, <u>i.e.</u> waiting, the Court also finds that such a claim lacks merit. "The injury that plaintiffs complain of is that they have been required to wait too long already. It would be disingenuous to now conclude that because they could simply wait longer the court

does not have jurisdiction." Sawad, 2007 WL 2973833 at *4; Sun, 2007 WL 2907993 at *4 (same). See also Singh, 470 F.Supp.2d at 1071 ("'Waiting for an agency to act cannot logically be an adequate alternative to an order compelling the agency to act.'") (quoting Fu v. Reno, 2000 WL 1644490 at *4 (N.D.Tex. Nov. 1, 2000)); Tang, 493 F.Supp.2d at 150 ("The duty to act is no duty at all if the deadline is eternity."); Kim v. Ashcroft, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004) ("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."); Asrani, 2007 WL 3521366 at *3 (finding that outside of seeking redress from the court, there is no adequate remedy where there was nothing in the record to allow the court to determine when plaintiff's name check would be returned or if it would be returned at all); Haidari, 2006 WL 3544922 at *5 ("Defendants miss the point. The question is whether the Plaintiffs have adequate, alternative means to address this very issue: the fact that they are still waiting.").

Here, plaintiff's application has been pending for over three years, and the Court finds that USCIS's failure to act on the application in that time frame constitutes final agency action for the purposes of this case. See Shah, 2007 WL 3232353 at *6 (finding that failure to act on an application for over two-and-one-half years constituted a final agency action under the APA).

Because plaintiff can establish a clear and indisputable right to have his application adjudicated in a reasonable amount of time, defendants have a nondiscretionary duty to honor that right, and plaintiff has no other adequate remedy, the Court finds that mandamus and the APA provide a valid basis for subject matter

jurisdiction. Therefore, this Court recommends that defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

### C.   Reasonableness of Delay

In plaintiff's opposition to defendants' motion to dismiss, plaintiff argued that the delay he has experienced is unreasonable as a matter of law.   Pl.'s Mem., p. 8. Defendants argue that a three-year delay is not unreasonable because the Complaint does not allege nefarious intent, and because the delay experienced is less than the five-year delay considered reasonable in Saleh v. Ridge, 367 F.Supp.2d 508 (S.D.N.Y. 2005).   Defs. Mem., p. 17.   There is authority to support plaintiff's claim that a delay in excess of 3 years in adjudicating his adjustment of status application is unreasonable (see Singh, 470 F.Supp.2d at 1071 (seven-year delay unreasonable); Yu, 36 F.Supp.2d 922, 932 (D.N.M. 1999) (two-and-a-half year delay unreasonable); Sun, 2007 WL 3548280 at *10 (three-year delay unreasonable); Haidari, 2006 WL 3544922 at *6 (delays of six years and four years unreasonable)).   However, "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of a particular case." Yu, 36 F.Supp.2d at 935.

The Court concludes that it cannot on the present record determine that delay in excess of three years is unreasonable as a matter of law.   In order to make a determination as to whether plaintiff's delay is unreasonable or not, it is necessary to evaluate information specific to plaintiff's case and the reason why plaintiff's name check in particular has been so delayed.   See Sawad, 2007 WL 2973833 at *5; Sun, 2007 WL 2907993 at *5 (both cases finding that before the court could determine whether delays were reasonable, it required information specific to the adjudication of

19

plaintiffs' applications and to the delay in their FBI name checks). The Court has before it no facts from which it can make a knowledgeable determination of the factors that would bear on its decision.[9] For all of these reasons, the Court recommends that defendants' Motion to Dismiss be denied.[10]

---

[9]     To determine whether agency delay is reasonable or not, courts have obtained guidance from the six factors set forth in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C.Cir. 1984):

> 1. The time agencies take to make decisions must be governed by a rule of reason.
>
> 2. Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.
>
> 3. Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake.
>
> 4. The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority.
>
> 5. The court should also take into account the nature and extent of the interests prejudiced by delay.
>
> 6. The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80. See also Yu, 36 F.Supp.2d at 934; Singh, 470 F.Supp.2d at 1069; Wang, 2007 WL 4200672 at *4; Sun, 2007 WL 3548280 at *8; Sawad, 2007 WL 2973833 at *5; Sun, 2007 WL 2907993 at *5 (all citing TRAC factors). Consequently, in the context of delayed adjudication of adjustment of status applications, other courts have considered such factors as: "(1) the source of the delay, (2) the complexity of the investigation, (3) whether any party participated in delaying the proceeding, (4) the nature and extent of the interests prejudiced by the delay, and (5) whether expediting action on agency activities will have an adverse affect on higher or competing priorities." Belegradek, 523 F.Supp.2d at 1368 (citations omitted).

[10]     If plaintiff's I-485 application is not immediately approved, pursuant to the February 4, 2008 USCIS Memorandum, the Court suggests that an appropriate record be developed and cross-motions for summary judgment be submitted to the Court by the parties on the reasonableness of the delay of completing plaintiff's FBI check and

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss be denied.


Dated:        February 14, 2008


_(signature)_

JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before March 3, 2008 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

---

adjudicating his adjustment of status application. See Aslam v. Mukasey, 2008 WL 220708 at *4 (E.D.Va. Jan. 25, 2008) (addressing issue of reasonableness on cross-motions for summary judgment after concluding in a previous order that the court had jurisdiction under the APA and Mandamus statutes).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR MOCANU | CIVIL ACTION |
| | No. 07-0445 |
| V. | |
| ROBERT S. MUELLER, ET AL. | |

| | |
|---|---|
| GUISEPPE CUSUMANO | CIVIL ACTION |
| | No. 07-0971 |
| V. | |
| MICHAEL B. MUKASEY, ET AL. | |

| | |
|---|---|
| MOHAMMAD BARIKBIN | CIVIL ACTION |
| | No. 07-3223 |
| V. | |
| UNITED STATES, ET AL. | |

| | |
|---|---|
| JEAN ELISSAINT | CIVIL ACTION |
| | No. 07-4747 |
| V. | |
| UNITED STATES, et al. | |

| | |
|---|---|
| ANDREW O. NEWTON, M.D. | CIVIL ACTION |
| | No. 07-2859 |
| V. | |
| DONALD MONICA, et al. | |

| | |
|---|---|
| TONGZIAO ZHANG | CIVIL ACTION |
| | No. 07-2718 |
| V. | |
| MICHAEL CHERTOFF, et al. | |

| | |
|---|---|
| SAID HUSSAIN | CIVIL ACTION |
| | No. 08-195 |
| V. | |
| MICHAEL B. MUKASEY, et al. | |

1

EXHIBIT A

FEB-12-2008  16:43                                                                    P.03
CASE 0:06-cv-05046-PAM-JSM   Document 17   Filed 02/14/08   Page 23 of 32
Case 2:07-cv-00445-MMB   Document 27   Filed 02/06/2008   Page 2 of 11

## PRAECIPE

TO THE CLERK OF THE COURT:

Kindly file the enclosed Certification of Supplement to the Administrative Record (AR

CIS) and attached Memorandum regarding **Revised National Security Adjudication and**

**Reporting Requirements** issued by USCIS as of February 4, 2008 in the above-captioned cases.

The above-captioned actions were joined by the Honorable Michael Baylson, Judge U.S. District

Court, for consolidated hearing with the other cases captioned on the Administrative Records

previously supplied by FBI and CIS. The purpose of this supplement to the CIS Administrative

Record (AR CIS) is to provide the Court and all counsel of record with a certified copy of the

Revised National Security Adjudication and Reporting Requirements issued by USCIS on

February 4, 2008 which has been sent to all USCIS offices and the FBI (see e-mail Smith to

Cannon at attached AR CIS 0103-0104.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

Virginia A. Gibson
Chief, Civil Division

Date: February 6, 2008

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VICTOR MOCANU                           CIVIL ACTION
                                        No. 07-0445
        V.

ROBERT S. MUELLER, ET AL.

---

GUISEPPE CUSUMANO                       CIVIL ACTION
                                        No. 07-0971
        V.

MICHAEL B. MUKASEY, ET AL.

---

MOHAMMAD BARIKBIN                       CIVIL ACTION
                                        No. 07-3223
        V.

UNITED STATES, ET AL.

---

JEAN ELISSAINT                          CIVIL ACTION
                                        No. 07-4747
        V.

UNITED STATES, et al.

---

HASSAIN                                 CIVIL ACTION
                                        No. 08-195
        V.

MUKASEY, et al.

---

ANDREW O. NEWTON, M.D.
                                        CIVIL ACTION
        V.                              No. 07-2859

DONALD MONICA, et al.

---

AR CIS 0097

TONGZIAO ZHANG                                    CIVIL ACTION
                                                  No. 07-2718
        V.

MICHAEL CHERTOFF, et al.

_____

SAID HUSSAIN                                      CIVIL ACTION
                                                  No. 08-195

        v.

MICHAEL B. MUKASEY, et al.

### CERTIFICATION OF SUPPLEMENT TO THE ADMINISTRATIVE RECORD

Gregory Smith, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am currently employed as the Acting Associate Director of the National Security and Records Verification Directorate of U.S. Citizenship and Immigration Services (USCIS), an agency within the U.S. Department of Homeland Security (DHS). My duty station is presently Washington, D.C.

2. I have been employed as the Associate Director since May 28, 2007. I have been employed by USCIS since March 2003, when the agency was created. My current duties include the management of the National Security and Records Verification Directorate, which includes individuals who work to resolve national security background check issues in the context of adjudicating applications and petitions for immigration benefits.

3. Due to the nature of my official duties, I am familiar with the procedures for investigation and examination of applicants for naturalization and adjustment of status and the communications between USCIS and the Federal Bureau of Investigation, which conducts name checks on applicants.

4. I have reviewed information about the name check process, USCIS policy on name checks, and other USCIS system of records, and I designated the Supplement to the Administrative Record in this case. This information was created in the regular course of USCIS business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this        day of February 2008.

GREGORY SMITH
Acting Associate Director
National Security and Record Verification
Directorate
United States Citizenship and Immigration
Services
Washington, D.C.

AR CIS 0100



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Domestic Operations of Directorate*
Washington, DC 20529

**U.S. Citizenship**
**and Immigration**
**Services**

FEB 4 - 2008

HQ 70/23 & 70/28.1

# Interoffice Memorandum

**TO:**       Field Leadership

**FROM:**   Michael Aytes
             Associate Director, Domestic Operations

**SUBJECT:**   Revised National Security Adjudication and Reporting Requirements

**Background**

U.S. Citizenship and Immigration Services (USCIS) conducts background checks on all
applicants, petitioners, and beneficiaries seeking immigration benefits. This is done both to
enhance national security and to ensure the integrity of the immigration process. USCIS has
previously mandated that FBI name checks be completed and resolved before any positive
adjudication can proceed on certain form types. This memorandum modifies existing guidance
for applications where statutory immigration provisions allow for the detention and removal of
an alien who is the subject of actionable information that is received from the FBI or other law
enforcement agencies after approval of the application.

USCIS is issuing revised guidance in response to recommendations of the DHS Office of
Inspector General (OIG-06-06) regarding the need to align the agency's background and security
check policies with those of U.S. Immigration and Customs Enforcement (ICE). The
*Background and Security Investigations in Proceedings Before Immigration Judges and the
Board of Immigration Appeals* regulations prevent immigration judges and the Board of
Immigration Appeals (BIA) from granting benefits to aliens before DHS confirms that all
background and security checks have been completed. *See* 8 C.F.R. § 1003.47(g); 8 C.F.R. §
1003.1(d)(6)(i). In the context of removal proceedings, ICE has determined that FBI fingerprint
checks and Interagency Border Inspection Services (IBIS) checks are the required security
checks for purposes of the applicable regulations. In the unlikely event that FBI name checks
reveal actionable information after the immigration judge grants an alien permanent resident
status, DHS may detain and initiate removal proceedings against the permanent resident. *See* 8
U.S.C. § 1227; *see also* 8 U.S.C. § 1256 (allowing DHS to rescind an alien's adjustment of
status).

www.uscis.gov

AR CIS 0101

FEB-12-2008 16:44 P.09

CASE 0:06-cv-05046-PAM-JSM Document 17 Filed 02/14/08 Page 29 of 32
Case 2:07-cv-00445-MMB Document 27 Filed 02/08/2008 Page 9 of 31

**Revised National Security Adjudication and Reporting Requirements**
Page 2

**Revised Guidance**

A definitive FBI fingerprint check and the IBIS check must be obtained and resolved before an Application for Adjustment of Status (I-485), Application for Waiver of Ground of Inadmissibility (I-601), Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act (I-687), or Application to Adjust Status from Temporary to Permanent Resident (Under Section 245A of Public Law 99-603) (I-698) is approved. USCIS will continue to initiate FBI name checks when those applications are received. Where the application is otherwise approvable and the FBI name check request has been pending for more than 180 days, the adjudicator shall approve the I-485, I-601, I-687, or I-698 and proceed with card issuance. The FBI has committed to providing FBI name check results within this timeframe.

There is no change in the requirement that FBI fingerprint check, IBIS check and FBI name check results be obtained and resolved prior to the adjudication of an Application for Naturalization (N-400).

Pending further guidance regarding post-audit reporting and tracking requirements and modifications to associated quality assurance procedures, applications approved pursuant to this memorandum shall be held at the adjudicating office. If derogatory or adverse information is received from the FBI after the application is approved, USCIS will determine if rescission or removal proceedings are appropriate and warranted.

Subject to the reporting requirements set forth in the February 16, 2007, memorandum titled "FBI Name Checks Policy and Process Clarification for Domestic Operations," an application or petition may be denied, dismissed, administratively closed, withdrawn, or referred to the Immigration Court at any time.

Questions regarding this memorandum should be directed through appropriate supervisory and operational channels. Local offices should work through their chain of command.

Distribution List:
Regional Directors
Service Center Directors
District Directors (except foreign)
Field Officer Directors (except foreign)
National Benefits Center Director

FEB-12-2008 16:45    P.10

CASE 0:06-cv-05046-PAM-JSM   Document 17   Filed 02/14/08   Page 30 of 32
Case 2:07-cv-00445-MMB   Document 27   Filed 02/06/2008   Page 9 of 11

**From:** Smith, Gregory B
**Sent:** Tuesday, February 05, 2008 11:40 AM
**To:** Cannon, Michael
**Subject:** Revised USCIS Name Check Guidance

Michael,

Thank you for meeting last week to discuss our mutual efforts to address the FBI name check backlog.

I am attaching revised guidance that USCIS will distribute to the field today. Under the revised guidance, a definitive FBI fingerprint check and the IBIS check must be obtained and resolved before an adjustment of status application is approved. USCIS will continue to initiate FBI name checks when those applications are received. Where the application is otherwise approvable and the FBI name check request has been pending for more than 180 days, the adjudicator shall approve the adjustment of status application.

The overwhelming majority of FBI name checks are completed within six months, and it is the goal to complete all FBI name checks within that time frame. While USCIS would prefer to have the FBI name check results before approving the application (and *will* have the results as the FBI meets its processing goals), the alien is already in the United States and DHS is able to detain and remove the alien irrespective of whether the adjustment application has been approved or remains pending.

The revised guidance does not make any changes to naturalization applications. USCIS will continue to require that FBI fingerprint check, IBIS check and FBI name check results be obtained and resolved prior to the adjudication of an application for naturalization. It is exceedingly difficult to denaturalize a citizen, and it is imperative that we protect the integrity of the naturalization process.

However, USCIS will prioritize allocation of additional appropriations (i.e. a significant percentage of the $20 million in the DHS appropriations bill) to addressing FBI name checks that delay adjudication of naturalization applications. Existing resources should not be diverted from pending adjustment of status name checks, but new resources should be directed to resolving those checks that hold up the oldest naturalization applications. All available options should be explored, including the use of additional contractors, shift work, rehired annuitants, and any other tools designed to decrease case processing times and increase productivity without sacrificing quality controls.

USCIS has previously requested that the FBI provide a detailed and reliable plan for linking additional resources to measurable improvements in FBI name check process. USCIS looks forward to working with you to develop that plan. USCIS has committed to addressing the backlog of pending naturalization applications, and dedicating additional resources to tackle the FBI name check issue is critical to the agency's success.

Regards,

Greg

AR CIS 0103

FEB-12-2008  16:45                                                                                    P.11
CASE 0:06-cv-05046-PAM-JSM   Document 17   Filed 02/14/08   Page 31 of 32
Case 2:07-cv-00445-MMB    Document 27    Filed 02/06/2008    Page 10 of 11

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served a true and correct copy of the Praecipe to file the

Certification of Supplement to the Administrative Record (AR CIS 0097-0102) and attached

Memorandum regarding **Revised National Security Adjudication and Reporting**

**Requirements** issued by USCIS as of February 4, 2008 first class mail, postage prepaid, on the

following:

**Laraine A. Ryan, Esq.**
1601 MILLTOWN RD., STE 8
PO BOX 5733
WILMINGTON, DE 19808
(Said Hussain)

**Jon Landau, Esquire**
Baumann, De Seve & Landau
510 Walnut Street
Suite 1340
Penn Mutual Building
Philadelphia PA 19106
(Mohammed Barikbin)

**Ephraim Tahir Mella, Esquire**
Law Offices of Ephraim Tahir Mella
1814 Callowhill Street, 1st Floor
Philadelphia, PA 19130
(Guiseppe Cusumano)

**David Kaplan , Esquire**
Orlow & Orlow, P.C.
620 Chestnut Street
Suite 656
Philadelphia, PA 19106
(Victor Mocanu)

**Daniel Sansoni, Esquire**
8040 Roosevelt Boulevard
Suite 218
Philadelphia, PA 19152
(Jean Eliassaint)

**Daniel George Anna, Esquire**
533 A Darlington Road
Media, PA 19063
(Andrew O. Newton, MD)

**Tongxiao Zhang, Pro Se**
26 Adamson Court
Phoenixville, PA 19460

3

FEB-12-2008  16:45                                                                    P.12
CASE 0:06-cv-05046-PAM-JSM   Document 17   Filed 02/14/08   Page 32 of 32
Case 2:07-cv-00445-MMB   Document 27   Filed 02/06/2008   Page 11 of 11

Virginia A. Gibson
Chief, Civil Division

February 6, 2008

4